

FILED & JUDGMENT ENTERED
Steven T. Salata

January  2  2020

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

In re:                                          )
                                                )
**JACOB D. JARVIS,**                            )    Chapter 13
                                                )    Case No.: 19-10085
                    Debtor.                     )
_____)

**ORDER SUSTAINING DEBTOR'S RENEWED OBJECTION TO CLAIM NO. 12 OF KAPITUS SERVICING, INC. F/K/A COLONIAL FUNDING NETWORK, INC.**

**THIS MATTER** is before the court on the Debtor's October 8, 2019 Renewed Objection to Claim No. 12 of Kapitus Servicing, Inc. F/K/A Colonial Funding Network, Inc. (the "Objection"). For the reasons stated herein, the court sustains the Debtor's Objection.

**Background**

The Debtor commenced this Chapter 13 case by filing a petition on March 11, 2019. In his Schedule E/F, the Debtor listed Money Works Direct, Inc. ("Money Works") as holding an $80,356.75 unsecured claim against the estate. On May 20, 2019 Kapitus Servicing, Inc. ("Kapitus") filed a proof of claim alleging an $86,139.02 secured claim on the basis that it is the servicing provider for Money Works, and the Debtor is indebted to Money Works. Kapitus amended its proof of claim on August 9, 2019 and

August 12, 2019 to provide additional supporting documentation. Ultimately, the Debtor then filed the Objection to Kapitus' proof of claim arguing that the debt should be treated as a general unsecured claim.

On October 6, 2015, the Debtor entered into a Revenue Based Factoring Agreement with Strategic Funding Source, Inc.[1] ("Strategic") to obtain a loan for $17,000. The Debtor and Strategic also executed a related security agreement (the "2015 Security Agreement") granting Strategic a security interest in various forms of the Debtor's property. The language of the 2015 Security Agreement granting Strategic a security interest is as follows:

> To secure [the Debtor's] payment and performance obligations to [Strategic] and its affiliates or the Funders, . . . *[the Debtor] hereby grants to [Strategic] a security interest* in (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by [the Debtor]; and (b) all proceeds, as that term is defined in Article 9 of the UCC (a and b collectively, the "Collateral").

(emphasis added). On October 8, 2015 Strategic, through its representative, Corporation Services Company, filed a UCC-1 financing statement (the "Financing Statement"), thereby perfecting its security interest. The Financing Statement only lists Corporation Services Company as the secured party and does

---

[1] Kapitus is a doing business as name for Strategic Funding Source.

2

not reference, either specifically or generally, any entities affiliated with the secured party. Additionally, the Secured Party Representative Services Agreement between Corporation Services Company and Strategic only listed Strategic as the customer and did not include any language regarding Strategic's affiliates.

The parties agree that the Debtor made the final payment on the balance of the 2015 loan with Strategic in February 2016.

On February 20, 2018, the Debtor entered into a Revenue Based Factoring Agreement with Money Works to obtain a $40,000 loan. The Debtor and Money Works executed another Revenue Based Factoring Agreement on February 28, 2018 whereby Money Works provided the Debtor another loan for $26,300. Money Works and the Debtor entered into separate security agreements for both of these loans and both granted Money Works a security interest in various types of the Debtor's property. The language in the security agreements granting a security interest to Money Works is identical and is as follows:

> To secure [the Debtor's] payment and performance obligations to [Money Works] and its affiliates or the Funders, . . . *[the Debtor] hereby grants to [Money Works] a security interest* in all personal property of [the Debtor], including all accounts, chattel paper, cash, deposit accounts, documents, equipment, general intangibles, instruments, inventory, or investment property, as those terms are defined in Article 9 of the Uniform Commercial Code of the Commonwealth of Virginia as amended (the "UCC"), whether now or hereafter owned or acquired by [the Debtor] and wherever located; and all proceeds of such property, as that term is defined in Article 9 of the UCC (collectively, the "Collateral").

(emphasis added).

Money Works failed to file a UCC-1 financing statement for either of the security agreements it entered into with the Debtor. Additionally, Money Works did not receive an assignment of the Financing Statement from Strategic, nor did Strategic amend the Financing Statement to include Money Works as a secured party.

The court held a hearing on the Debtor's Objection to Kapitus' proof of claim on November 19, 2019. At the hearing, counsel for the Debtor argued that Kapitus' claim should be treated as a general unsecured claim because neither Money Works nor Strategic filed a financing statement perfecting Money Works' security interests. Debtor's counsel also noted that Strategic did not amend the Financing Statement or assign it to Money Works.

Strategic agrees that Money Works did not file a financing statement in order to perfect its security interests and takes the position that filing a financing statement was unnecessary because of the Financing Statement between Strategic and the Debtor. It argues that Strategic and Money Works are part of an investment syndicate, Strategic is the lead syndicate, and Strategic invested its own funds in all three transactions. Therefore, because Money Works is a wholly owned subsidiary, the secured parties were all the same and Strategic, not Money Works, is actually the secured party under the Money Works security agreements.[2]

---

[2] The nature of the relationship regarding the corporate structure of the relevant entities is corroborated based on the Affidavit of Michael Jesse Carlson in Support of Strategic Funding Source, Inc. d/b/a Kapitus and Kapitus Servicing, Inc. f/k/a Colonial Funding Network, Inc.'s Response to Renewed Objection to Claim.

4

Strategic points to language in the Money Works security agreements that references obligations owed to Money Works and its affiliates or funders to support its argument that Strategic is the actual secured party. In addition, Strategic takes the position that Strategic acted on its own behalf and as a representative of its wholly-owned subsidiary, Money Works, when it filed the Financing Statement. Therefore, because Strategic is the secured party under the Money Works security agreements, the security interests granted therein are perfected by virtue of the Financing Statement Strategic filed as a representative for Money Works.

## Analysis

The issue before the court is whether Kapitus' claim should be treated as a secured claim or a general unsecured claim. A creditor's proof of claim "constitutes prima facie evidence of the amount and validity of the claim." Stancill v. Harford Sands Inc, (In re Harford Sands Inc.), 372 F.3d 637, 640 (4th Cir. 2004) (citing 11 U.S.C. § 502(a); FED. R. BANKR. P. 3001(f)). If a party objects to a claim, the burden shifts to the objecting party to introduce evidence to rebut the presumptive validity of the claim. Id. (citations omitted). If the objecting party carries its burden, the creditor must prove the "amount and validity of the claim by a preponderance of the evidence." Id. (citations omitted).

While federal law governs what assets make up the property of the bankruptcy estate, property interests are determined by state law. See Butner v. United States, 440 U.S. 48, 55 (1979). Both of the Revenue Based Factoring Agreements that the Debtor entered

5

into with Money Works stipulate that disputes arising out of the agreements will be governed by the laws of Virginia. Therefore, Virginia law governs whether Money Works' security interests were perfected when the Debtor filed his petition.

Under Virginia's version of the Uniform Commercial Code, a security interest is subordinate to the rights of an individual who becomes a lien creditor prior to the perfection of the security interest. See Va. Code Ann. § 8.9A–317(a)(2) (West 2013). The Bankruptcy Code provides that the Trustee is granted the status of a hypothetical lien creditor in all of the Debtor's property as of the date a debtor files a bankruptcy petition. See 11 U.S.C. § 544(a). Therefore, if the Money Works security agreements were not perfected as of the petition date, the Trustee's interest supersedes that of Money Works and the claim must be treated as unsecured.

"'Security agreement' means an agreement that creates or provides for a security interest." Va. Code Ann § 8.9A–102(a)(74) (West 2013). "Unless the grant of a security interest is contained in the security agreement, there is no security interest." In re Adirondack Timber Enter., Inc., No. 08-12553, 2010 WL 1741378, at *3 (Bankr. N.D.N.Y. Apr. 28, 2010) (quoting In re Modafferi, 45 B.R. 370, 371 (S.D.N.Y. Jan. 9, 1985)).

The Debtor's security agreements with Money Works only conveyed security interests to Money Works and did not grant security interests to Strategic. "A security agreement executed solely between a debtor and creditor does not grant an affiliate

6

of the creditor a security interest in the collateral." Adirondack Timber, 2010 WL 1741378, at *3 (citing Republic Nat'l Bank of Dall. v. Fitzgerald (In re E.A. Fretz Co.), 565 F.2d 366, 369 (5th Cir. 1978)). In Adirondack Timber, the court reasoned that the grant of a security interest cannot extend to a party that is not actually granted a security interest. Id. The court finds this reasoning persuasive.

The Money Works security agreements only granted security interests to Money Works. Again, the Money Works security agreements stated "to secure . . . obligations to . . . its affiliates or the Funders, . . . [the Debtor] hereby grants to [Money Works] a security interest . . . ." The Money Works agreements and the agreement at issue in Adirondack Timber all included language regarding securing obligations to the secured party and its affiliates. However, similar to the security agreement in Adirondack Timber, the language of the security agreements conveying security interests to Money Works does not reference any entity other than Money Works. The Money Works security agreements do not specifically grant Strategic security interests, nor do they generally grant Money Works' affiliates security interests. Therefore, Strategic did not receive security interests by virtue of the Money Works security agreements, and Strategic's Financing Statement cannot perfect Money Works' security interests because the Money Works security agreements did not convey security interests to Strategic.

7

At the hearing, counsel for Strategic attempted to distinguish this case from Adirondack Timber because, unlike the parties in Adirondack Timber, Strategic and Money Works are part of a financing syndicate. The court disagrees with Strategic's position that, because Strategic funded the Money Works loans and because Strategic is Money Works' parent company, Strategic is the actual secured party under the Money Works security agreements and its security interests are perfected by the Financing Statement. Money Works issued the loans in its own name and, as addressed above, is the only entity that received security interests in the Money Works security agreements. Strategic did not cite any case law or provision of the Virginia Uniform Commercial Code that supports its argument that the existence of a syndicate financing relationship between it and Money Works extends security interests granted solely to Money Works to Strategic.

Kapitus' proof of claim, alleging a secured claim, was initially entitled to a presumption of validity. See Harford Sands, 372 F.3d at 640. The Debtor then offered evidence that the claim should be treated as a general unsecured claim because Money Works issued the relevant loans and Money Works did not perfect its security interests. Kapitus failed to carry its burden of proving the secured status of its claim by a preponderance of the evidence.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Debtor's Renewed Objection to Claim No. 12 of Kapitus Servicing, Inc. F/K/A Colonial Funding Network, Inc. is **SUSTAINED**, and Kapitus' claim is allowed as a general unsecured claim.

**SO ORDERED.**

| | |
|---|---|
| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order. | United States Bankruptcy Court |

9